UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Z.A.,

                              Petitioner,

            v.

LAURA HERMOSILLO, Acting Seattle
Field Office Director, *et al.*,

                              Respondents.

Case No. C26-144RSM

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241

This matter comes before the Court on Petitioner Z.A.'s Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Dkt. #1. The Court has reviewed the Petition, the Response filed by the Government, Dkt. #8, a reply, Dkt. #11, and the remainder of the record. The following facts are taken from the verified petition and a declaration of a deportation officer submitted by the Government. *See* Dkts. #1 and #9. The parties generally agree as to the core facts of this case and disagree only about the application of law.

Petitioner Z.A. is a 28-year-old asylum-seeker from Yemen who has been detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, since June 22, 2025.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28
U.S.C. § 2241 - 1

Z.A. entered the United States by crossing the Rio Grande River on June 20, 2021, and was apparently picked up by Customs and Border Patrol ("CBP") later that day. He was charged under 8 U.S.C. § 1459(a) for a misdemeanor failure to comply with reporting requirements after entry. Z.A. pleaded guilty on February 2, 2022, was sentenced to eight months, with credit for time served, and then transferred to immigration custody.

In April of 2022, Z.A. was interviewed by an asylum officer and found to have a credible fear of torture in Yemen. On April 19, 2022, Z.A. was served with a Notice to Appear charging him as an individual present in the U.S. without being admitted or paroled. On June 6, 2022, he filed an I-589 application for asylum. That same day, an immigration judge ("IJ") released him on a $20,000 bond. He made his way to the Seattle area. On May 12, 2023, the Seattle Immigration Court scheduled a master calendar hearing for July 14, 2025. *See* Dkt. #9 at 3.

Z.A. lived in the Seattle area for several years without incident until June of 2025. He was picked up by Canadian immigration at Peace Arch Park on the border between Washington State and Canada in what he calls an "unfortunate incident" where he inadvertently crossed the border. *See* Dkt. #1 at 14.

Canadian officials processed Z.A. as an asylum applicant, applied the Safe Third Country regulation, denied him entry, and returned him to U.S. CBP custody. CBP sent him to the NWIPC, where he has been detained for over seven months. His bond was cancelled.

Z.A. was not provided with an opportunity before a neutral adjudicator to explain and argue that he did not intend to enter Canada. To his knowledge, he has not been provided with any notice regarding the cancellation or breach of his $20,000 bond.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 2

Respondents continued to process his case pursuant to his previously filed Notice to Appear ("NTA"), and set him for an individual, or merits, hearing on his asylum case on October 31, 2025.  The IJ denied his asylum claim and ordered him removed to Yemen.

Z.A. appealed this denial, and that appeal is still pending at the Board of Immigration Appeals ("BIA"). No briefing schedule has been issued.

While in custody, Z.A. applied for Temporary Protective Status ("TPS").  This was on December 8, 2025, and no progress has been made on that front.  Congress established the TPS program as part of the Immigration Act of 1990, Pub L. No. 101-649, § 302, 104 Stat. 4978, 5030–36, to provide temporary relief to noncitizens from countries facing wars, disasters, or emergencies that make safe return to their countries of origin impossible.  The DHS Secretary may designate a country for TPS if the Secretary finds that there is: (A) an "ongoing armed conflict" in the country that "pose[s] a serious threat to the[] personal safety" of people from that country; (B) there has been an "environmental disaster in [that country] resulting in a substantial, but temporary, disruption of living conditions," where the state cannot handle return of the country's nationals, and where the foreign state officially requests TPS designation; or (C) there "exist extraordinary and temporary conditions in the foreign state that prevent" noncitizens from safely returning. *See* 8 U.S.C. § 1254a(b)(1).  Yemen was initially designated for TPS on September 3, 2015.  For individuals who did not have TPS previously, Yemen was re-designated on September 4, 2024.  DHS "shall not remove the [noncitizen] from the United States during the period in which [TPS] status is in effect."  8 U.S.C. § 1254a(a)(1)(A).

A noncitizen's TPS application must establish three basic criteria for eligibility: (1) he must have "been continuously physically present in the United States since the effective date of the most recent designation" of the foreign country; (2) he must have "continuously resided in

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 3

the United States since such date as the [Secretary] may designate;" and (3) he must be "admissible as an immigrant" and "not ineligible for temporary protected status" based on his criminal history or other delineated conduct (*e.g.*, terrorist activity or religious persecution of others). 8 U.S.C. § 1254a(c)(1)(A); *see also* 8 C.F.R. § 244.2. Congress made certain exceptions to the admissibility requirement, including for individuals who are inadmissible because they lack a valid entry document. *See* 8 U.S.C. § 1254a(c)(2)(A)(i) (incorporating provisions of 8 U.S.C. §§ 1872(a)(5) and (7)(A)); *see also* 8 C.F.R. § 244.3.

The statute also provides for temporary benefits while a TPS application is pending, but only after the noncitizen "establishes a prima facie case of eligibility." 8 U.S.C. § 1254a(a)(4)(B); *see also* 8 C.F.R. § 244.5(b).

The parties disagree about whether this Court can determine Z.A.'s prima facie case of eligibility for TPS.  Petitioner cites *Salad v. Dep't of Corr.*, 769 F. Supp. 3d 913, 922–23 (D. Alaska 2025), where the Court examined the record and found that "Salad has shown that he has applied for TPS and is prima facie eligible." *Id*.  Respondents cite *Osman v. Schmidt*, No. 25-cv-286, 2025 WL 870048, at *2 (E.D. Wis. Mar. 20, 2025) at *2 ("[Petitioner's] argument seems to be that he is entitled to release in the interim—i.e., before USCIS makes a prima facie determination of his TPS eligibility. But that outcome is not supported by the text of the statute or implementing regulations, which afford applicants relief only after the applicant is found prima facie eligible.").  On the facts of this case, the Court finds it improper to weigh in on Z.A.'s TPS eligibility at this time.  But that is not Z.A.'s only basis for seeking habeas relief.

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  In this case, Petitioner contends that his arrest and detention violate the

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 4

Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022).  The parties both discuss the application of the *Mathews* text applies here, and the Court will consider each *Mathews* factor in turn to determine whether Petitioner's arrest and detention comport with constitutional due process requirements.  In so doing, the Court is mirroring the

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 5

application of this test used by other judges in this District. *See, e.g., E.A. T.-B. v. Wamsley, et al.*, No. 25-1192-KKE, -- F. Supp. 3d --, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025).

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). That Petitioner was handed over to ICE without notice and after committing no crime, detained for seven months, and remains in custody undoubtedly deprives him of an established interest in his liberty.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. The Court agrees with Petitioner that the risk of erroneous deprivation of his liberty interest in the absence of a pre-detention hearing is high under the particular facts of this case.

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. The Government clearly has an interest in detaining removable non-citizens under certain circumstances to the extent needed to ensure that they do not abscond or commit crimes. But where Petitioner has been living for years in the Seattle area on bond, following all the rules and waiting for his hearing, and there was no material change in his particular factual circumstances prior to arrest, the Government fails this factor. It is likely that Petitioner will qualify for the TPS program. There is no evidence on the record that he is a flight risk or danger to the community. The Court finds that the Government's interest here is low. *See also E.A. T.-B.*, *supra*.

Based on this review of the *Mathews* factors, the Court finds that Petitioner has a protected liberty interest in his continuing release from custody, and that due process requires that Petitioner receive a hearing before an immigration judge before he can be re-detained.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 6

The Government argues that Petitioner's re-detention at the Canadian border qualifies as a special case because he left and then reentered the United States. The Court finds this inadequate.  Based on the existing factual record, there is no reason to believe that Petitioner's departure and reentry into the United States was anything other than a visit to the Peace Arch Park.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Petitioner's habeas petition is GRANTED.  The Court ORDERS that Petitioner shall be released from custody immediately and may not be re-detained until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate.   Petitioner's unopposed Motion to proceed under pseudonym, Dkt. #6, is GRANTED.

DATED this 26th day of February, 2026.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 7